**ROBERT C. JAROSH, #6-3497**
**ERIN E. BERRY, #7-6063**
Hirst Applegate, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
rjarosh@hirstapplegate.com
eberry@hirstapplegae.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TODD SCHMIDT, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | Civil Action No. 23-CV-101-F |
| | } | |
| EDWARD SEIDEL, in his official capacity as | } | |
| the President of the University of Wyoming, and | } | |
| RYAN O'NEIL, individually and in her official | } | |
| capacity as Dean of Students for the University of | } | |
| Wyoming, | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

Defendants, Edward Seidel and Ryan O'Neil ("Defendants"), by and through undersigned counsel, hereby respectfully submit this *Memorandum in Support of Defendants' Motion for Partial Dismissal* pursuant to FED. R. CIV. P. 12(b)(6).

## INTRODUCTION

After publicly targeting a University of Wyoming ("University") student to discriminatorily harass her based entirely on her membership in a protected class, Plaintiff filed suit against two University officials, claiming multiple violations of constitutional law. Setting aside that Plaintiff did not have a constitutional right to publicly harass or discriminate against the student he targeted (which is primarily addressed in the contemporaneously filed *Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction),* Plaintiff's claims against Ryan O'Neil individually must be dismissed in their entirety based upon qualified immunity. In addition, Plaintiff's claims for violations of Due Process and Equal Protection fail to satisfy the basic federal pleading standards required to proceed. As a result, those claims must be dismissed as well. Finally, Plaintiff's request for nominal damages is improper and subject to dismissal.

## FACTS

Plaintiff alleges the following facts in his *Verified Complaint* [Doc. No. 1], which this Court may assume are true only for the purpose of considering *Defendants' Motion to Dismiss* and the arguments contained herein.

### December 2, 2022, Events in Wyoming Union Breezeway

For a number of years, Plaintiff has reserved a table at the Wyoming Union breezeway on the University campus, where he has "shared his biblical beliefs." *Compl.* at ¶ 20. On December 2, 2022, Plaintiff posted a banner on his Wyoming Union breezeway table, identifying a single transgender female student by name and stating, "God created male and female and [student's name] is a male." *Id.* at ¶ 100. The banner caused a disturbance in the Wyoming Union, including a group of students who gathered in front of Plaintiff's table to block the banner

from view. *Id.* at ¶¶ 107-108. When Plaintiff tried to "engage with these students, asking them why they were blocking his sign," they told him the banner was inappropriate. *Id.* at ¶ 108.

As the disruption unfolded, Dean of Students Ryan O'Neil arrived and approached Plaintiff, expressing concern to him about his banner. *Id.* at ¶ 113. Dean O'Neil left the table for a short time, but then returned and told Plaintiff the banner violated University policy. *Id.* at ¶ 115. Dean O'Neil then showed Plaintiff the Union Policies and Operating Procedures (the "Union Policies and Procedures"), and pointed out Article II, § 2.B.4. *Id.* Dean O'Neil provided Plaintiff with a copy of the Union Policies and Procedures his banner violated. *Id.* Dean O'Neil then told Plaintiff to remove the student's name from the banner. *Id.* at ¶ 121. Plaintiff initially refused to remove the student's name from the banner. *Id.* at ¶ 123. Plaintiff later relented, removed the student's name from the banner, and continued his activities at his table for the rest of the day. *Id.* at ¶¶ 126-127.

*The Aftermath*

In the days that followed, University officials determined Plaintiff's conduct violated the University's policies prohibiting discrimination and harassment of students. *Id.* at ¶ 148. Specifically, University officials determined Plaintiff's banner violated University Regulation ("UW Regulation") 4-2,[1] which prohibits discrimination against and harassment of University employees and students based upon their membership in a protected class, including gender identity. *Id.* at ¶ 148; UW Regulation 4-2(II). Additionally, University officials found that

---

[1] Plaintiff's *Verified Complaint* references and quotes UW Regulation 4-2, but does not incorporate it by referenced or attach it. Indisputably authenticate copies of the UW Regulations are available at https://www.uwyo.edu/regs-policies/index.html. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

HIRST APPLEGATE, LLP
LAW OFFICES
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

Plaintiff violated Article II, § 5.B.15, which prohibits "language or actions that discriminate or harass [student organizations, university departments, university organizations, outside entities]." *Id.* at ¶ 150. University officials further determined that based on prior complaints about Plaintiff's conduct and multiple verbal warnings, Plaintiff violated Article II, § 5.B.15. *Id.* at ¶¶ 150-152. As a result, the University suspended Plaintiff from access to a Wyoming Union breezeway table for a period of one year. *Id.* at ¶¶ 147; 153.

*University Policies and Procedures*

Plaintiff's use of a Wyoming Union breezeway table is governed by UW Regulations and the Union Policies and Procedures. *Id.* at ¶ 23; UW Regulation 11-7. Use of the buildings, grounds, and services at the University must be consistent with the University's primary purposes (instruction, research, and public service). Pursuant to UW Regulation 6-4, individuals or organizations not affiliated with the University and "whose activities are consistent with the University's primary purposes" ("external users") may use the buildings, grounds, and services, subject to the University's regulations, policies, and procedures, including UW Regulation 6-4. As a condition of use, "[a]ll persons or groups, whether internal or external, using University buildings, grounds or equipment shall follow all University Regulations and applicable city, county, state or federal ordinances and statutes." UW Regulation 6-4(VI).

The Union Policies and Procedures state that requests to use Wyoming Union space may be denied "for reasons which include, but may not be limited to, conflict with the mission of the University, conflict with the mission of the Wyoming Union, unfeasible setup/turnaround time, and historic negligence or abuse." Art. II § 2(B)(4). In addition, the Union Policies and Procedures

regulate the use of display cases, advertisements, posters, signs, banners, and bulletin boards. Art. II § 4.

The Union Policies and Procedures also regulate use of tables in the Wyoming Union breezeway. Art. II, § 5. Only a limited group of individuals may reserve or use tables in the breezeway, including student organizations, University departments and organizations, sponsored outside entities, local merchants, vendors, and nonprofit organizations. Art. II, § 5(B)(1). Persons using tables at the Wyoming Union breezeway "must remain behind their respective tables and in no way hinder the flow of traffic through the building." Art. II, § 5(B)(8). In addition, persons must maintain their tables in a "safe and non-threatening environment," and may not "discriminate [against] or harass" others. Art. II, § 5(B)(15). Finally, any individual using a table in the breezeway is "expected to bring their views in a respectful and civil manner." *Id.*

UW Regulation 4-2 establishes the policies and procedures at the University related to discrimination against and harassment of University employees and students based upon their membership in a protected class. Protected classes under UW Regulation 4-2 include "race, gender, religion, color, national origin, disability, age, protected veteran status, sexual orientation, ***gender identity***, genetic information, creed, ancestry, [and] political belief." UW Regulation 4-2(II) (emphasis added). UW Regulation 4-2 specifies the University will not tolerate acts of discrimination or harassment based upon status in a protected class against any student, and explains the University's obligations when it receives a report of discrimination or harassment, including under Title IX. UW Regulation 4-2(III), (V). As previously stated, use of University buildings and grounds is ***expressly conditioned*** on compliance with all UW Regulations. UW Regulation 6-4(VI).

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 12(b)(6), a court shall dismiss a complaint when the plaintiff fails to state a claim upon which relief can be granted. Historically, courts construed complaints liberally and granted motions to dismiss only rarely, where "it appear[ed] beyond a doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal quotations and citation omitted). However, in *Bell Atl. Corp. v. Twombly*, the Supreme Court recognized that "this famous observation has earned its retirement." 550 U.S. 544, 563 (2007). The Supreme Court then prescribed a new inquiry: whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also, e.g., Lindley Constr., Inc. v. Bank of the West*, No. 16-CV-0048-F, 2016 U.S. Dist. LEXIS 194470, *3 (D. Wyo. July 19, 2016). Under this standard:

> [A] plaintiff must "nudge[ ] [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Ridge*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted) (brackets and emphasis in original). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted) (bracket in original); *see also, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "In keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Thus, a court's approach is two pronged. *Id.* First, the court identifies "legal conclusions" not entitled to the assumption of truth. *See id.* at 680. Second, the court addresses the "nub" of the complaint – "the well-pleaded, nonconclusory factual allegation[s]" – to determine whether the complaint states a plausible claim for relief. *See id.*

## ARGUMENT

I.   **Dean O'Neil is entitled to qualified immunity with respect to the claims against her individually.**

Though he does not expressly say as much, Plaintiff appears to assert all five of the claims in his *Verified Complaint* against Dean O'Neil in both her official and her individual capacity. However, the Court should dismiss the claims against Dean O'Neil in her individual capacity because Plaintiff did not have a clearly established right to use a Wyoming Union breezeway table to harass or discriminate against an individual student based upon her membership in a class protected by the law.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, for the law to be clearly established, "there must

be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (quoting *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

> To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This clearly established standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably . . . anticipate when their conduct may give rise to liability for damages.

*Reichle v. Howards,* 566 U.S. 658, 664 (2012) (internal quotation marks, brackets, and citations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

This "clearly established rights" inquiry is not a generalized one. Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (emphasis in original, internal quotations and citations omitted). Similarly, "clearly established law should not be defined at a high level of generality" but, instead, "must be particularized to the facts of the case." *White v. Pauly,* 580 U.S. 73, 79 (2017) (internal quotations and citations omitted). When a defendant raises qualified immunity as a defense, the plaintiff has a heightened pleading standard, meaning the plaintiff must "show with particularity facts and law establishing the inference that the defendants violated a constitutional right." *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

Here, Dean O'Neil is entitled to qualified immunity because the right Plaintiff asserts—the right to harass and/or discriminate against a student at a table in a University student union based upon her membership in a class protected by law (transgender female)—is not clearly established (nor is it a right at all). Regardless of whether Plaintiff wants to characterize his conduct as harmless, Dean O'Neil engaged in an exercise of discretion when she asked him to take down the banner or the student's name. The banner was located both in a University building dedicated to educational activities and pursuits, and where the student worked. Dean O'Neil's exercise of discretion was based upon a review of University policies and input from other University officials after concluding Plaintiff's actions violated the policies and were discriminatory and harassing. Dean O'Neil could not have reasonably been aware of a law holding it was unconstitutional to ask or tell Plaintiff to remove the banner or the student's name based upon the harassing nature of singling out the student—*there is no such law*.

In addition, and to the extent that Plaintiff alleges Dean O'Neil is somehow the University official responsible for suspending his ability to reserve a table in the Wyoming Union breezeway,[2] the same analysis is true. Specifically, the suspension was a discretionary act based upon a variety of factors. Those factors included a review of policies and procedures, prior complaints and verbal warnings, and a finding of discriminatory harassment by the University's Equal Opportunity Report and Response Office ("EORR"). *Compl.* at ¶ 148. Again, there is no law that would have put Dean O'Neil on notice that such a suspension was illegal.

---

[2] It was a decision by University leadership.

As a result, Dean O'Neil is entitled to qualified immunity. Specifically, Plaintiff must (and cannot) supply this Court with a case where a university dean acting under similar circumstances, i.e., in circumstances where an individual directly harassed or discriminated against a university student based on membership in a protected class (transgender female), was held to have violated the First Amendment. *See, e.g., Hunt v. Bd. of Regents,* 792 Fed. Appx. 595, 606 (10th Cir. 2019) (quoting *Pauly,* 580 U.S. at 79) (affirming qualified immunity where plaintiff failed to identify a case where a defendant acting under similar circumstances was held to have violated the First Amendment). In our case, Plaintiff wholly failed to do so, likely because he has no such right. To the contrary, Plaintiff's speech directly targeted a member of the University's student body and employee of the University in violation of UW Regulations meant to protect students based upon characteristics like gender identity. These regulations, combined with federal law *requiring* the University to protect its students from discrimination and harassment based on gender identity, lead to one conclusion: Dean O'Neil did not violate a clearly established right. *See, e.g.,* Title IX of the Education Amendment of 1972 ("Title IX"); Title VII of the Civil Rights Act of 1946 ("Title VII"); *Bostock v. Clayton Cty.,* 140 S. Ct. 1731 (2020).

At a minimum, Dean O'Neil was not on clear notice that her actions would violate the First Amendment, and for that reason alone, she is entitled to qualified immunity. *See Abbott v. Pastides,* 900 F.3d 160, 175 (4th Cir. 2018). This is particularly true *because* this is a First Amendment case. Many courts have recognized that First Amendment parameters are "especially difficult to discern in the school context." *Id.* at 174 (citing *Morgan v. Swanson,* 755 F.3d 757, 7650 (5th Cir. 2014) ("educators are rarely denied immunity from liability arising out of First-Amendment disputes"); *Doninger v. Niehoff,* 642 F.3d 334, 351 (2d Cir. 2011); *Mellen v. Bunting,*

327 F.3d 355, 376 (4th Cir. 2003)). The facts of this case show that Dean O'Neil acted in a discretionary capacity to protect a University student from discrimination and harassment. This action cannot reasonably be said to have constituted a knowing violation of a clearly established right. Dean O'Neil is therefore entitled to qualified immunity, and the Court should dismiss her in her individual capacity, with prejudice.

II.     **Plaintiff's Due Process claim lacks the requisite facts to adequately plead a cause of action.**

For his third cause of action, Plaintiff summarily asserts Article II, §§ 2.B.4 and 5.B.15 are unconstitutionally vague. Plaintiff's claim lacks the requisite factual allegations and fails as a matter of law.

A complaint must do more than formulaically recite the elements of a cause of action. *Twombly,* 550 U.S. at 555. Rather, a court must disregard all conclusory statements of law and determine whether a plaintiff has alleged ***specific factual allegations*** that, if assumed true, plausibly suggest a viable cause of action. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). A law or regulation is unconstitutional if "it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402-403 (1966)). Facial challenges require more proof than as-applied challenges "because facial challenges seek to vindicate not only individual plaintiffs' rights but also those of all others who wish to engage in the speech being prohibited." *Harmon v. City of Norman,* 61 F.4th 779, 795 (10th Cir. 2023) (quoting *Faustin v. City & Cnty. of Denver,* 423 F.3d 1192, 1196 (10th Cir. 2005)) (internal quotations and brackets omitted).

Here, Plaintiff makes a conclusory allegation that "Article II, §§ 2.B.4 and 5.B.15 are vague and lack objective standards for decision-making needed to curb discretion of university officials." *Compl.* at ¶ 203. However, Plaintiff fails to identify specific facts as to why the University policies are vague. To the contrary, Plaintiff's *Verified Complaint* makes clear that he ***understood*** the policies—he just thinks they were wrongly applied to him. *Id.* at ¶¶ 151-152 (Article II, § 5.B.15 provides external community members will be warned once and subsequent complaints may result in loss of access to tabling); *id.* at ¶ 160 (stating Plaintiff was unaware of prior complaints); *id.* at ¶ 165; 166-169 (setting forth the University's discrimination policy and definitions); *id.* at ¶ 170 (Plaintiff's alleged reasons why his conduct did not violate the University's discrimination policy). Because the allegations in the *Verified Complaint* fail to identify any facts supporting Plaintiff's allegation that Article II, §§ 2.B.4 and 5.B.15 are facially vague, his claim for violation of the Due Process fails as a matter of law.

Regarding his assertion that Article II, §§ 2.B.4 and 5.B.15 violated Due Process as applied, such claim also fails. Plaintiff's allegations related to vagueness as applied to him are "neither factually nor legally distinct from the First Amendment concerns." *Lavelle v. City of Las Vegas,* 447 F. Supp. 3d 1015, 1026-27 (dismissing a claim for violation of Due Process as applied to the plaintiff as it was not distinct from the First Amendment claim). As a result, the Court should also dismiss Plaintiff's as applied Due Process claim related to Article II, §§ 2.B.4 and 5.B.15, as it is duplicative of and subsumed into his First Amendment claim.

### III.    Plaintiff's Equal Protection claim contains mere legal conclusions and fails as a matter of law.

Plaintiff's *Verified Complaint* includes a claim for a violation of Equal Protection. While Plaintiff does not specify the basis for which he alleges University officials treated him differently, it appears he is alleging a "class-of-one" claim.[3] To prevail on a class-of-one theory, a plaintiff must establish that others "similarly situated in every material respect" were intentionally treated differently without a rational basis for the difference in treatment. *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006). The government action must be "irrational and abusive and wholly unrelated to any legitimate state activity." *Kan. Penn Gaming,* 656 F.3d at 1216 (quoting *Mimics, Inc. v. Vill of Angel Fire,* 394 F.3d 836, 849 (10th Cir. 2005) (internal quotations and citations omitted)). "This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Kan. Penn Gaming,* 656 F.3d at 1216 (citing *Jicarilla Apache Nation,* 440 F.3d at 1211)).

Courts approach class-of-one claims with caution, wary of second guessing the reasonableness of state and local decision making. *Kan. Penn Gaming,* 656 F.3d at 1216.

> These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers, IRS agents, university administrators, zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome.

---

[3] To the extent Plaintiff claims University officials treated him differently on the basis of his religion, such claim fails as a matter of law. Plaintiff does not identify any facts to support a claim for disparate treatment on the basis of religion, including a complete lack of facts identifying similarly situated individuals outside of his religion that harassed or discriminated against a student based on his or her membership in a protected class but were allowed to continue to reserve a table in the Wyoming Union breezeway.

*Id.* (quoting *Jennings v. City of Stillwater,* 383 F.3d 1199, 1210-11 (10th Cir. 2004)).

Because of these concerns, plaintiffs have a "substantial burden" to "demonstrate others similarly situated in all material respects were treated differently and that there is no objectively reasonable basis for the defendant's action." *Kan. Penn Gaming,* 656 F.3d at 1217 (quoting *Jicarilla Apache Nation,* 440 F.3d at 1212)) (internal quotations omitted). Consistent with the federal pleading standard, a plaintiff must "set out specific examples of similarly situated individuals and differing treatment." *Kan. Penn Gaming,* 656 F.3d at 1219 (citing *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir. 2010)). Dismissal is appropriate where a plaintiff fails to allege "the identity or characteristics of other, similarly situated [individuals] and how those similarly situated [individuals] were treated differently." *Kan. Penn Gaming,* 656 F.3d at 1219 (quoting *Glover v. Mabrey,* 384 F. App'x 763, 778 (10th Cir. 2010)).

Here, Plaintiff summarily asserts that others were similarly situated and treated differently. Specifically, Plaintiff claims "Defendants have allowed other organizations to convey views and present displays through breezeway tables in the UW Union while simultaneously preventing Schmidt from having access to a breezeway table." *Compl.* at ¶ 208. However, Plaintiff's broad allegation is merely a "formulaic recitation" of a legal conclusion and inadequate to meet the federal pleading standard. *See Twombly,* 550 U.S. at 555. Plaintiff has not (and cannot) identify specific organizations or individuals that engaged in actions similar to his and who were then permitted to continue harassing and/or discriminating against University students or employees at tables in the Wyoming Union breezeway. As such, his Equal Protection claim fails as a matter of law.

Even if Plaintiff had alleged other specific instances where individuals harassed and/or discriminated against University students and were allowed to continue to reserve tables at the Wyoming Union breezeway, his claim still fails. As the facts of Plaintiff's *Verified Complaint* set forth, the University had an objectively reasonable justification for its actions and communicated such justification to Plaintiff. Plaintiff harassed a University student and employee by name. *Compl.* at ¶ 100. The University has an obligation to comply with Title IX and Title VII by prohibiting discriminatory harassment based on gender identity. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020); *M.A.B. v. Bd. of Educ.*, 286 F. Supp. 704, 713 (D. Md. 2018) (finding gender stereotyping cases are cognizable under Title IX); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 129 (E.D. Penn. 2020) (misgendering may constitute unlawful discrimination); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 542 F.Supp.3d 814 (S.D. Ind. 2021) (teacher's refusal to refer to student by name and pronouns that correspond with gender identity was not protected by the First Amendment). Requiring compliance with federal law prohibiting discrimination and harassment based on membership in a protected class is objectively reasonable and is a legitimate state activity. Accordingly, the University had a justifiable reason for its treatment of Plaintiff and his Equal Protection claim fails as a matter of law.

IV.     **The Eleventh Amendment bars Plaintiff's claim for nominal damages.**

In his prayer for relief, Plaintiff alleges he is entitled to nominal damages. *Compl.* at ¶¶ H-I. However, and once Dean O'Neil is dismissed in her individual capacity, the Eleventh Amendment bars even nominal damages against the University or its officials in their official capacities. "Eleventh Amendment immunity bars a damages action against a State in federal court." *Harrison v. Univ. of Colo. Health Scis. Ctr.,* 337 Fed. Appx. 750, 753 (10th Cir. 2009)

(quoting *Rozek v. Topolnicki,* 865 F.2d 1154, 1158 (10th Cir. 1989)) (internal quotations omitted). Nominal damages are similarly barred by the Eleventh Amendment. *See, e.g., Erker v. Schmeeckle,* 2022 U.S. Dist. LEXIS 133584 (D. Colo. July 27, 2022) (dismissing a claim for nominal damages against an arm of the state based on Eleventh Amendment immunity). Because official capacity claims are treated as claims against the entity, a plaintiff cannot recover damages against state officials acting in their official capacities. *Harrison,* 337 Fed. Appx. at 753 (citing *Moss v. Kopp,* 559 F.3d 1155, 1168 n.13 (10th Cir. 2009)). The University is an arm of the state and it and its officials in their official capacities are therefore entitled to Eleventh Amendment immunity. *Gressley v. Deutsch,* 890 F. Supp. 1474 (D. Wyo. 1994).

## CONCLUSION

For the reasons set forth herein, the Court should dismiss Plaintiff's claims against Dean O'Neil in her individual capacity, his third and fourth causes of action in their entirety, and his claim for nominal damages.

Dated:  24 July 2023.

EDWARD SEIDEL and RYAN O'NEIL,
Defendants


BY: /s/ Erin E. Berry
    **ROBERT C. JAROSH, #6-3497**
    **ERIN E. BERRY, #7-6063**
    OF HIRST APPLEGATE, LLP
    Attorneys for Defendants
    P. O. Box 1083
    Cheyenne, WY 82003-1083
    Phone: (307) 632-0541
    Fax: (307) 632-4999
    rjarosh@hirstapplegate.com
    eberry@hirstapplegate.com

**CERTIFICATE OF SERVICE**

   I certify the foregoing ***Memorandum in Support of Defendants' Motion for Partial Dismissal*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 24 July 2023, and that copies were served as follows:

| | |
|---|---|
| Douglas J. Mason<br>Mason & Mason, P.C.<br>26 S. Lincoln Avenue<br>P. O. Box 785<br>Pinedale, WY 82941-0785<br>dmason@masonlawpinedale.com<br>*Attorney for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |
| Nathan W. Kellum<br>Center for Religious Expression<br>699 Oakleaf Office Lane, Suite 107<br>Memphis, TN 38117<br>nkellum@crelaw.org<br>*Attorney for Plaintiff* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |

/s/ Erin E. Berry
OF HIRST APPLEGATE, LLP
Attorneys for Defendants