

FILED

8:55 am, 8/31/23

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TODD SCHMIDT,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWARD SIEDEL, in his official capacity as the President of the University of Wyoming, and RYAN O'NEIL, individually and in her official capacity as Dean of Students for the University of Wyoming,<br><br>    Defendants. | Case No. 2:23-cv-00101-NDF |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion for a Partial Dismissal filed by Defendants Edward Seidel ("Seidel"), in his official capacity as the President of University of Wyoming ("UW"), and Ryan O'Neil ("O'Neil"), individually, and in her official capacity as Dean of Students for UW (collectively, "UW Officials") against Plaintiff Todd Schmidt ("Schmidt"). ECF 17. For the following reasons, the Court grants the Motion in part and denies the Motion in part.

All claims against Ryan O'Neil individually including Schmidt's request for nominal damages, and Schmidt's Third Cause of Action (Due Process), are DISMISSED WITH PREJUDICE.

Background[1]

Schmidt is an elder at the Laramie Faith Community Church. ECF 9. He frequently visits the UW campus to share his beliefs with UW college students on various social and political issues from his religious perspective. ECF 9. He has reserved a table in the UW Union breezeway on a regular basis for the past 17 years. ECF 9. The UW Union allows campus groups and various outside organizations to utilize breezeway tables to communicate with students. *Id*. The breezeway tables provide access to a high degree of student pedestrian traffic. Schmidt uses his breezeway table to display various DVDs and books. He also places on his table a Velcro-backed sign with plastic lettering to display different messages. *Id*.

According to UW Officials, they have over the years warned Schmidt to stay behind his breezeway table[2] and not engage in a confrontational manner towards passersby. ECF 15. The University alleges it has received and documented complaints from students that Schmidt "got in people's faces" while trying to talk to them and chased after students who refused to speak with him. *Id*. Schmidt states that he was not aware of any student complaints to University staff about him and received no warning from the University regarding student complaints. ECF 8, p. 17.

---

[1] The Court recounted these facts in its Order granting the Plaintiff's Motion for a Preliminary Injunction. ECF 23.
[2] "Persons responsible for their tables must remain behind their respective tables and in no way hinder the flow of traffic through the building." *Wyoming Union Policies and Operating Procedures FY 2023*, Art II, Sec. 5.B.8, https://www.uwyo.edu/csil/student-orgs/_files/approved-union-policy-spring-2022.pdf (last visited August 7, 2023).

In September of 2022, a UW student named Artemis Langford joined a UW sorority. Langford was born a biological male but identifies as female. Schmidt disagrees with the propriety of transgender students joining sororities, and on December 2, 2022, he placed a sign at his breezeway table in the Union stating, "God created male and female and Artemis Langford is a male." ECF 9. Various students gathered in front of his table in an attempt to block others, and Langford,[3] from seeing Schmidt's sign. These students engaged in tense debate with Schmidt. UW Dean of Students Ryan O'Neil asked Schmidt to remove Langford's name from his sign because it violated Article II Section 2.B.4 of the UW Union policies,[4] and because it targeted an individual University student in a protected class. ECF 15, p. 37. Schmidt initially refused to remove Langford's name; however, after O'Neil responded that she would call University Police, he agreed to remove Langford's name. ECF 9, p.6. O'Neil left and Schmidt continued to speak with students from his table. *Id*.

On December 7, 2022, Dean O'Neil sent Schmidt a letter suspending his ability to reserve a table in the UW breezeway until Spring 2024. ECF 8 p. 182. She also reminded him to adhere to University policies or risk trespassing. *Id.* She based this decision on a December 7th report from the University's Equal Opportunity Report and Response Office[5] which stated that Schmidt had violated UW Regulation 4-2 (Discrimination and

---

[3] Artemis Langford is both a UW student and an employee in the Wyoming Union. ECF 15.
[4] "Requests [for table space at the WY Union] may be denied for reasons which include, but may not be limited to, conflict with the mission of the University, conflict with the mission of the Wyoming Union, unfeasible setup/turnaround time, and historic negligence or abuse." *Wyoming Union Policies and Operating Procedures FY 2023*, Art II, Sec. 2.B.4, https://www.uwyo.edu/csil/student-orgs/_files/approved-union-policy-spring-2022.pdf (last visited August 7, 2023).
[5] The University stated that this office received at least 19 reports categorizing Schmidt's conduct that day as "discriminatory, harassing, and/or threatening." ECF 15, p. 9.

Harassment)[6] and noted that his behavior was "on a trajectory which, if continued, is likely to also create a hostile environment." *Id*. Dean O'Neil also cited the Wyoming Union Policies and Operating Procedures Article II Section 5.B.15[7] which prohibits discrimination or harassment and requires individuals tabling in the Union to bring views in a respectful and civil manner. *Id.* Lastly, she referenced prior multiple verbal warnings to Schmidt for previous student complaints.

Schmidt filed a complaint alleging violations of the Free Speech Clause of the First Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and of his right to be free from unconstitutional conditions. ECF 1. Schmidt then filed a motion for a preliminary injunction seeking relief from application of any UW policy that would bar him from access to a breezeway table in the UW Union or prevent him from expressing his views about the sex status of Artemis Langford. ECF 8. The Court granted

---

[6] UW Regulation 4-2 defines those terms:
>Discrimination: Occurs when an individual suffers an adverse consequence on the basis of the individual's Protected Class, including but not limited to failure to be hired or promoted or denial of admission to an academic program.
>Harassment: Verbal or physical conduct that unreasonably interferes with an individual's work or academic performance or creates an intimidating or hostile work or educational environment. This definition encompasses specific conduct and behaviors defined in UW Regulation 4-3 (Title IX and Sexual Misconduct).

*University of Wyoming Regulations 4-2*, https://www.uwyo.edu/regs-policies/_files/docs/regulations-july-2018/uw_reg_4-2_effective_7-1-18.pdf (last visited August 7, 2023).

[7] "The union breezeway tabling will be maintained as a safe and non-threatening environment for student organizations, university departments, university organizations, outside entities sponsored by one of the previous groups listed, local merchants, vendors, and/or non-profits. Language or actions that discriminate or harass the above groups will not be tolerated. Students are expected to recognize that respecting the dignity of every person is essential for creating and sustaining a flourishing University community. Students should act to discourage and challenge those whose actions may be harmful to and/or diminish the worth of others, in accordance with the Student Code of Conduct. All individuals tabling, whether UW affiliated or not, are expected to bring their views in a respectful and civil manner. a. Complaints received about students will be brought to the office of the Dean of Students as a potential Student Conduct. Complaints received about external community members will be warned once. Subsequent complaints may result in a loss of access to tabling." *Wyoming Union Policies and Operating Procedures FY 2023*, Art II, Sec. 5.B.15, https://www.uwyo.edu/csil/student-orgs/_files/approved-union-policy-spring-2022.pdf (last visited August 7, 2023).

this motion. ECF 23. The UW Officials filed the instant motion for partial dismissal seeking to dismiss all claims against Ryan O'Neill individually, the third cause of action (due process), the fourth cause of action (equal protection), and the request for nominal damages. ECF 17.

Legal Standard for Rule 12(b)(6) Motions to Dismiss

At this initial phase, the Court must take all well-pleaded factual allegations as true and view those facts in the light most favorable to the plaintiff. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). Dismissal is proper if, taking those facts as true, the plaintiff has failed to present a plausible right to relief. *Id.; see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). "A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (internal citation and quotation marks omitted, citing *Twombly,* 550 U.S. at 570). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Twombly*, 550 U.S. at 555). But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Discussion

**Claims Against Dean O'Neil in her Individual Capacity**

The UW Officials argue that Dean O'Neil is entitled to qualified immunity with respect to claims against her individually because she did not violate any clearly established rights of Schmidt. Schmidt counters that she did in fact violate Schmidt's clearly established rights.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1204 (10th Cir. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To survive a motion to dismiss under Rule 12(b)(6) involving a qualified immunity defense, the plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996). Clearly established law provides officials with "fair warning" their conduct is unconstitutional. *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005). There need not be "a case directly on point, but existing

precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.*

Here, Plaintiff argues that it is clearly established law that viewpoint discrimination is unconstitutional. This is undeniably true. *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 786 (1978) (holding that viewpoint discrimination plainly offends the First Amendment). However, that statement is at too high a level of generality for qualified immunity analysis. It does not tell us what sets of facts constitute viewpoint discrimination. *See Morgan v. Swanson*, 755 F.3d 757, 761 (5th Cir. 2014) (holding that viewpoint discrimination was too general a principle to have clearly established a teacher's constitutional obligations); *see also Weise v. Casper*, 593 F.3d 1163, 1167-68 (general proposition that educator could not engage in viewpoint discrimination was not enough to suggest clearly established law).

Courts generally show a high degree of deference to educators' professional judgment because of the important, difficult job they perform. *Morgan*, 755 F.3d at 760; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 37 (2009) (referring to high degree of deference courts grants to educators in fourth amendment context). Educators are rarely denied immunity in First Amendment cases. *Morgan*, 755 F.3d at 760. This Court concluded in its Order Granting Plaintiff's Motion for Preliminary Injunction, ECF 23, that Schmidt was likely to prevail on his claim that he experienced unconstitutional viewpoint discrimination. Dean O'Neil believed Schmidt's use of a

7

particular student's name constituted harassment of that student based upon that student's membership in a class protected by law. While this Court disagreed, the analysis was not straightforward, and Dean O'Neil's belief was not unreasonable. First Amendment jurisprudence in this area is "abstruse" and "complicated" and cannot be said to be clearly established under these facts. *Id*. at 761; *see also Abbott v. Pastides*, 900 F.3d 160, 174 (holding that First Amendment parameters are especially difficult to discern in the school context); *see also Mellen v. Bunting*, 327 F.3d 355, 376 (4th Cir. 2003) (college official entitled to qualified immunity despite violating Establishment Clause). Therefore, the Court finds that Dean O'Neil is entitled to qualified immunity. Qualified immunity bars all claims against Dean O'Neil in her individual capacity including Plaintiff's request for nominal damages.[8] *Cummins v. Campbell*, 44 F.3d 847, 850 (10th Cir. 1994).

**Equal Protection Claim**

Defendants argue that Plaintiff's Equal Protection claim violation contains mere legal conclusions and fails as a matter of law. They argue that Schmidt has not identified others who were similarly situated and how they were treated differently from himself. Further, the University had a justifiable reason for its treatment of Schmidt. Schmidt counters that his claim involves his status as a Christian and he is similarly situated to other groups who table in the Union.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

---

[8] Schmidt is not pursuing nominal damages against Defendants in their official capacities, ECF 21, p. 8. Therefore, Schmidt will not be able to recover nominal damages.

which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, Schmidt's claims that he experienced differential treatment compared to those like him amounts to merely a recasting of his First Amendment argument. He does not claim he was treated differently in any way other than by experiencing viewpoint discrimination.

When an equal protection claim merely rewords a first amendment claim we fuse the claims together and they both succeed or fail simultaneously. *See Barr v. Lafon* 538 F.3d 554, 575 (6th Cir. 2008) (finding that plaintiffs' equal protection claim and first amendment claim entailed essentially the same analysis); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 n. 4 (1992) (noting that Supreme Court sometimes fuses First Amendment analysis with Equal Protection analysis); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013) (when alleged equal protection violation is based on a First Amendment claim we fuse the First Amendment into the Equal Protection Clause); *see also Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 779-80 (9th Cir. 2014) (same).

The facts underlying Schmidt's First Amendment claims are the same facts that underly his Equal Protection claim. This Court has already found that Schmidt is likely to succeed on his First Amendment claim. ECF 23. Therefore, because the analysis for the two claims is essentially the same, Schmidt's Equal Protection claim survives Defendants' motion to dismiss. These two claims will fail or succeed together.

**Due Process Claim**

UW Officials argue that Schmidt's Due Process Clause claim is a formulaic, conclusory statement of law. Schmidt fails to specify why the University policies are vague, and in fact just thinks they were wrongly applied to him. Schmidt counters that UW policies 2.B.4 and 5.B.15[9] are unduly vague because they do not supply sufficient clarity.

The Due Process Clause bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The void-for-vagueness doctrine states that a policy is so vague as to violate due process if ordinary people cannot understand what conduct is prohibited or the policy encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Even if expressive rights are involved however, "perfect clarity and precise guidance" are not required." *United States v. Williams*, 553 U.S. 285, 304 (2008). "Nor does a regulation flunk the vagueness test simply by 'the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved.'" *Harmon v. City of Norman, Oklahoma*, 61 F.4th 779, 798 (10th Cir. 2023) (citing *United States v. Williams*, 553 U.S. 285, 306 (2008)).

In the school disciplinary context courts demand less-specific policies because schools need to maintain discipline. *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 266 (3d Cir. 2002); *see Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686

---

[9] *See supra* notes 4 and 7.

(1986) (holding that school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions).

Here, Schmidt claims that 2.B.4 is unduly vague. 2.B.4 states that the University can deny reservation space in the UW Union for "historic negligence or abuse", conflict with the mission of the University[10] or conflict with the mission of the Wyoming Union.[11] Schmidt does not identify which mission statement he believes is vague. He merely claims that they do not address the situation involving his sign nor does he know how he violated them. This is not a persuasive argument. The Court finds that both mission statements, as well as the phrase "historic negligence or abuse" are not so vague as to violate the Due Process Clause. These phrases are written for the school context and have clear purposes.

Similarly, Schmidt argues that 5.B.15 is vague. The portion of 5.B.15 that applies to Schmidt requires individuals tabling to "bring their views in a respectful and civil manner."[12] Schmidt believed he was behaving civilly. His belief does not mean the policy fails to provide a standard for conduct. This policy "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

---

[10] The University's mission is defined: "As Wyoming's university, we unlock the extraordinary in every person through education, research, innovation, engagement, and service." *Forward for Wyoming Mission*, https://www.uwyo.edu/strategic-plan/mission-statement.html (last visited August 30, 2023).

[11] The Union's mission is defined: "As an integral part of the University's educational mission, the Wyoming Union fosters a sense of community by providing quality programs, services and facilities that promote development, embrace diversity, and cultivate loyalty to the University. The Wyoming Union provides a nurturing environment within which students are encouraged to pursue excellence, to develop leadership, and to realize their potential." *Welcome to the Wyoming Union*, https://www.uwyo.edu/union/index.html (last visited August 30, 2023).

[12] Schmidt also references the portion of 5.B.15 that prohibits discriminatory or harassing language but acknowledges that this applies only to students. Therefore, it's possible that this part of the policy was incorrectly applied to Schmidt, but as written it does not fail to communicate what conduct is prohibited.

Lastly, Schmidt has not provided any argument that these policies encourage arbitrary and discriminatory enforcement. Therefore, this Court dismisses Schmidt's claim that these policies are so vague as to violate the Due Process Clause.

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Partial Dismissal. ECF 17.  Therefore, it is HEREBY ORDERED that the following claims are DISMISSED WITH PREJUDICE:

- Claim III, Violation of the Due Process Clause; and
- All claims pled against Ryan O'Neil, in her individual capacity including Plaintiff's request for nominal damages.

IT IS SO ORDERED.

Dated this 31st day of August, 2023.

NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE